UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOYE MAYBERRY,
O/B/O M.I.J.

    Plaintiff,                              Civil Action No. 12-11256

v.                                       HON. JOHN COREBETT O'MEARA
                                         U.S. District Judge
                                         HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Toye Mayberry brings this action on behalf of her minor son under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Childhood Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

Plaintiff, proceeding on behalf of her minor son ("Claimant"), applied for Childhood Supplemental Security Income on March 17, 2009, alleging disability as of December 27, 2008 (Tr. 107-109). On December 14, 2010, Administrative Law Judge ("ALJ") Jacqueline Y. Hall-Keith presided at an administrative hearing held in Oak Park, Michigan (Tr. 26). Claimant (Tr. 56-78) and Plaintiff (Tr. 78-97) testified. On February 18, 2011, ALJ Hall-

Keith found Claimant not disabled (Tr. 22-23). On January 18, 2012, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on March 21, 2012.

## **BACKGROUND FACTS**

Claimant, born July 10, 2002, was eight when ALJ Hall-Keith issued his decision (Tr. 23, 107). Plaintiff's application for benefits for her son alleges disability due to Attention Deficit Hyperactivity Disorder ("ADHD") (Tr. 123).

### A. Claimant's Testimony

Claimant, right-handed, testified that he was currently in third grade (Tr. 56). He stated that he took medication every morning to ensure that he "act[ed] right in school" (Tr. 57). He denied medication side effects (Tr. 57-58). He stated that his favorite school subjects were art, science, and gym (Tr. 59). He denied disliking any of his classes (Tr. 59). He opined that he needed to improve "just a little" in math (Tr. 60). *Plaintiff interjected that her son had been on the "Prinicpal's Honor Roll" at his previous school* (Tr. 64). Claimant stated that he did his homework without being prompted (Tr. 65). He testified that his relationship with other students was "great" (Tr. 66). He stated that in first and second grade, he received suspensions for excessive talking but had not received disciplinary action since beginning third grade at a new school (Tr. 67). He stated that at his new school, he always raised his hand before speaking (Tr. 68).

Claimant testified that he lived with his mother and 24-year-old brother with whom he had a "great" relationship (Tr. 67-68). He stated that he had five friends at school (Tr. 69). Claimant indicated that he bathed and dressed himself without help (Tr. 70-74). He admitted that he did not always put his toys away (Tr. 77). Claimant testified that he spent his free time coloring, watching television, and playing video games (Tr. 77).

**B. Plaintiff's Testimony**

Plaintiff testified that Claimant had been diagnosed with asthma in December, 2009 and now required the use of a nebulizer and inhalers (Tr. 78). She stated that Claimant had recently experienced bronchitis, requiring the use of antibiotics (Tr. 79). *The ALJ urged Plaintiff to sign release forms for medical records relating to Claimant's asthma treatment* (Tr. 82-83). Plaintiff stated that over-exertion brought on the asthma attacks (Tr. 88).

Plaintiff stated that in 2005, Claimant had a lymph node removed from the side of his neck (Tr. 85). She conceded that Claimant was "quiet now[] because he's on the medication, but if he wasn't, he'd be all over the place" (Tr. 88). She indicated that Claimant's medication was effective in quelling symptoms of ADHD (Tr. 88). She stated that before Claimant began receiving his current medication, he required constant attention (Tr. 90). She testified that Claimant was achieving academically above grade level (Tr. 91, 93). She conceded that Claimant was capable of telling time and reading street signs (Tr. 92). She stated that he became overly active when bored (Tr. 93). She denied that he experienced problems with coordination or using utensils (Tr. 96).

**C.    Medical and Academic Evidence**

**1. Treating Sources**

In December, 2008, Plaintiff reported that her son was "extremely talkative" (Tr. 149). Plaintiff stated that Claimant talked loudly and threw food and got into fights in the school lunch room (Tr. 149, 157). He was assigned a fair prognosis (Tr. 150). Claimant appeared cheerful but anxious with an appropriate mood and poor judgment (Tr. 158). He was referred for family therapy (Tr. 159).

A March, 2009 evaluation by Claimant's second-grade teacher notes a number of absences due to doctors' appointments, sickness, and oversleeping (Tr. 113). Salud Sample

stated that Claimant was nonetheless progressing satisfactorily in all subjects (Tr. 113). Sample found the absence of impairment in "acquiring and using information" (Tr. 114). In "attending and completing tasks," Claimant was found to experience "an obvious problem" in the ability to work without distracting himself or others, but did not experience any other significant limitation (Tr. 115). In "interacting and relating to others," Claimant required improvement in playing cooperatively, keeping friends, asking permission, and following rules (Tr. 116). Claimant had significant problems in gross motor and manual activities and using good judgment (Tr. 117-118). Sample noted that Claimant was taking Concerta for ADHD at the time of evaluation (Tr. 119).

In June, 2009, Claimant was evaluated for allergies (Tr. 203). In October, 2010, Claimant's third-grade teacher, Laura Deneau, found the absence of all academic and social problem, but conceded that she lacked sufficient knowledge to evaluate Claimant's medical condition (Tr. 187-193). The following month, Claimant was re-prescribed Concerta (Tr. 197). In December, 2010, Claimant received a refill of Abuterol (Tr. 196).

### 2. Non-Treating Sources

In March, 2009, Daniel Blake, Ph.D. completed a non-examining Childhood Disability Evaluation form on behalf of the SSA, finding that Claimant had no limitation in acquiring and using information; "less than marked" limitations in attending and completing tasks; and interacting and relating with others (Tr. 182). Dr. Blake also found "less than marked" limitations in moving about and manipulating objects but found "marked" limitations in "caring for yourself" (Tr. 183). Dr. Blake noted that Claimant experienced behavioral problems but was "able to perform age appropriate tasks" (Tr. 179, 185).

In July, 2009, psychiatrist L. Imasa, M.D. performed a consultative evaluation of Claimant on behalf of the SSA (Tr. 170-173). Claimant appeared fully oriented with an

appropriate affect (Tr. 171). Dr. Imasa's notes state that Claimant was "not able to sit still and was constantly moving in his chair" (Tr. 171). Dr. Imasa assigned Claimant a GAF of 50 with a guarded prognosis[1] (Tr. 172).

### 3. Medical Records Submitted With Plaintiff's Motion for Summary Judgment

In November, 2010, Claimant sought emergency treatment for "a dry hacking cough." *Docket #12,* pg. 6 of 14. He was administered Tylenol for a fever and Albuterol and Atrovent before being released in stable condition. *Id.* at 7 of 14.

December, 2011 psychological treating records show that Claimant was 90 percent medication compliant and was at the 50 percent mark in achieving the goals of impulse control and sustaining attention. *Id.* at 12 of 14. A July, 2012 psychiatric evaluation states that Claimant did not engage in dangerous behaviors. *Id.* at 9 of 14. The evaluation states that he received As and Bs in school. *Id.* He appeared fully oriented with a logical thought process and fair insight. *Id.* at 10 of 14. Claimant was assigned a GAF of 58.[2] *Id.* at 11 of 14.

### D. The ALJ's Decision

Citing the medical records submitted as of the date of his decision, ALJ Hall-Keith found that Claimant experienced the severe impairments of ADHD, oppositional defiance disorder ("ODD"), asthma/bronchitis, and obesity but that the conditions did not meet or equal any listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1 (Tr. 16). She found

---

[1] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Diagnostic and Statistical Manual of Mental Disorders* at 34 ("*DSM-IV-TR*")(4th ed.2000).

[2] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* (*DSM-IV-TR*)(4th ed.2000).

that in the domain of "Acquiring and Using Information," Claimant had "no limitation" (Tr. 17-18). In the domain of "Attending and Completing Tasks," she found "less than marked limitation" (Tr. 18-19). In the domain of "Interacting and Relating to Others," the ALJ also found that Claimant had "less than marked" limitations (Tr. 19-20). The ALJ found no limitations in the domain of "Moving About and Manipulating Objects" or the domain of "Caring for Yourself" (Tr. 20-21) and less than marked limitations in "Health and Physical Well-Being" (Tr. 22).

Citing the medical and academic records, the ALJ noted that Claimant's focus had "dramatically improved" since beginning the current medication (Tr. 19). The ALJ observed that Claimant was "quite well spoken" at the hearing and had not experienced interpersonal problems since changing schools (Tr. 20). She noted that Claimant was involved in sports and did not experience problems with small motor skills (Tr. 21). The ALJ acknowledged testimony that Claimant did not always pick up after himself, but noted that he completed his homework without being prompted (Tr. 21). She noted that while Claimant was obese and reported a history of asthma, he did not experience signs of a marked disorder in the domain of Health and Physical Well-being (Tr. 22).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**
### **Childhood Benefits**

42 U.S.C. § 1382c (a)(3)(C)(I) provides that "[a]n individual under the age of 18 shall be considered disabled" if he or she "has a medically determinable physical or mental impairment which results in marked and severe functional limitations."[3] In evaluating whether a child is disabled, the Commissioner is to consider, in sequence, whether the child claimant 1) is "doing substantial gainful activity" 2) has a severe impairment, and if so 3) has "an impairment(s) that meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.924(a). In determining whether the child claimant is disabled at the third step, the Commissioner determines functional ability in six domains:

(i) Acquiring and using information;

(ii) Attending and completing tasks;

(iii) Interacting and relating with others;

---

[3] Childhood claims are subject to the same 12-month durational requirement as adult claims. 42 U.S.C. § 1382c (a)(3)(C)(i)

(iv) Moving about and manipulating objects;

(v) Caring for yourself; and,

(vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

To establish disability at the third step, "the impairment(s) must . . . result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* A "marked" limitation is defined as an impairment(s) that "interferes seriously" with the ability "to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation "interferes *very* seriously" with the ability "to independently initiate, sustain, or complete activities"(emphasis added). 20 C.F.R. § 416.926a(e)(3).

## ANALYSIS

Plaintiff, proceeding *pro se*, argues in effect that Claimant's psychological symptoms warrant a disability finding. *Plaintiff's Brief* at 1-2*, Docket #12.* She states that Claimant "had a touch of autism" between the ages of 12 to 21 months. *Id.* at 1. She concedes that Claimant's symptoms have improved since taking medication, but contends that the ALJ did not take into account the extra demands placed on her by Claimant's ADHD. *Id.* at 1-2. She states that "[i]f I didn't get [Claimant] on medication there would be problems." *Id.* at 2. Plaintiff states that Claimant's hyperactivity is detrimental to her own health. *Id.* She notes that "the doctor suggests I put on headphones or tune him out." *Id.*

### A. Substantial Evidence Supports the Non-Disability Finding

Notwithstanding Plaintiff's contentions, the ALJ's findings are well supported and well

explained. The ALJ's determination of no impairment in acquiring and using information is supported by the opinions of Claimant's second and third-grade teachers, both of whom found no limitations in that domain (Tr. 18, 114, 188). Plaintiff testified that even before receiving good results from ADHD medication, Claimant was achieving above grade level (Tr. 91, 93). The March, 2009 non-examining assessment also found no limitation (Tr. 170). Likewise, the ALJ's finding that Claimant had less than marked limitation in attending and completing tasks is supported by the second grade academic records showing that impairments in that domain were non-severe and a third grade assessment finding no limitation (Tr. 19, 115, 188). While a psychological intake examiner found that Claimant's prognosis was only "fair," the conclusions were largely based on Plaintiff's assessment of her son's problems (Tr. 149-159). At the hearing, Plaintiff conceded that Claimant's medication was effective in improving symptoms of ADHD (Tr. 88).

In the third domain, interacting and relating with others, the ALJ's finding of less than marked limitation is supported by the second grade teacher's finding that Claimant's problems were less than "serious" and the third grade teacher's finding of no limitation (Tr. 20, 116, 189). Plaintiff's present claim that her son had "a touch of autism" at one to two years of age is unsupported by medical or academic records or her own testimony. The ALJ's finding that Claimant experienced no limitations in the domain of moving about and manipulating objects stands at odds with Dr. Blake's non-examining finding that Claimant experienced some, but less than marked limitations in that domain (Tr. 21, 183). While the second grade assessment found "serious" problems in three out of seven subcategories of gross motor and manipulative activities (Tr. 117) the third grade assessment found the absence of all limitation in that domain (Tr. 190). Plaintiff also denied that Claimant experienced coordination problems (Tr. 96). Thus, there is no basis to conclude that the Claimant had *marked* limitations in this domain.

To be sure, the ALJ's determination that Claimant experienced no limitation in the domain of "caring for yourself," contradicts Dr. Blake's findings of marked limitations in that domain (Tr. 21,183). However, the second grade assessment found the absence of serious impairment in that domain, noting that Claimant "comes to school neat and orderly," notwithstanding the presence of the less than serious problems in being patient and using good judgment regarding personal safety (Tr. 118). The third grade assessment, showing no limitation in that domain, supports the ALJ's finding[4] (Tr. 191). The ALJ's finding that Claimant experienced less than marked limitation in health and well-being is supported by treating records showing that symptoms of asthma were controlled with medication (Tr. 196, 203). While the third grade teacher declined to evaluate Claimant's health conditions, her assessment contained no mention that Claimant experienced attendance problems due to illness.

**B. Medical Evidence Submitted With Plaintiff's Motion for Summary Judgment**

Material submitted subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). The district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695–96. Sentence Six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

---

[4] Even assuming that Dr. Blake's finding of marked limitations in the domain of "caring for yourself" had been adopted by the ALJ, the finding of a marked limitation in one domain would not change the non-disability finding. 20 C.F.R. § 416.926a.

These records do not provide grounds for a Sentence Six remand, even assuming that Plaintiff could show good cause for their late submission. The December, 2011 psychological treating records postdate the ALJ's decision by approximately 10 months and are thus intrinsically immaterial to whether Claimant was disabled as of the February 18, 2011 decision. If Plaintiff believes that these records or others postdating the decision support a disability finding, the proper remedy is to initiate a new claim for benefits. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir. 1988). Even assuming that the newer records were relevant to the February, 2011 decision, they support, rather than undermine, the non-disability opinion. As of December, 2011, Claimant was receiving As and Bs in school and did not engage in risky behaviors. *Docket #12* at pg. 9 of 14. While November, 2010 emergency room records (showing treatment for a cough and fever) were created in the relevant period, they do not contradict the ALJ's determination that Claimant was not disabled. *Id. 6-7*.

In closing, I note that while Plaintiff believes that her own health problems have been exacerbated by Claimant's ADHD, her son's testimony and academic and psychological records amply support the conclusion that symptoms of the condition were suppressed with medication. Accordingly, because the ALJ's decision is well within the "zone of choice" accorded to the fact-finder at the administrative hearing it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: May 16, 2013                     R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on May 16, 2013, electronically and/or by U.S. mail.

                                        s/ Michael Williams
                                        Relief Case Manager for the Honorable
                                        R. Steven Whalen